Steven A. McKAY

v.

**SECRETARY OF the UNITED STATES AIR FORCE.**

**Misc. No. 69–80–W.**

United States District Court
D. Massachusetts.

Dec. 3, 1969.

Daniel Klubock, Boston, Mass., for plaintiff.

Herbert F. Travers, Jr., U. S. Atty., Stanislaw R. J. Suchecki, Mary M. Brennan, Asst. U. S. Attys., for defendant.

## OPINION

WYZANSKI, Chief Judge.

Steven A. McKay filed on December 1, 1969 at 4:29 P.M. "a petition for writ of habeas corpus or mandamus" naming as respondent no individual, but the "Secretary of the United States Air Force." Briefly, his petition claims that as a conscientious objector to war, he is entitled to be discharged from the United States Air Force, with which he alleges he is now associated as "Airman Basic, United States Air Force Reserve"; and also claims that he is entitled to have the Secretary restrained from requiring him to report on December 4 to Lackland Air Force Base, Texas, for a period of 48 months active duty.

This Court set the matter for hearing at 9:30 A.M. on December 3. At 8:41 A.M. on December 3 petitioner's agent, authorized by this Court to serve process, served the petition in Washington, D. C. on the Secretary of the United States Air Force by delivering copies of the same to Col. Krysikeroski, alleged to be the Secretary's authorized agent.

At the opening of the hearing the Assistant United States Attorney, acting for respondent, moved to dismiss the petition because no person having custody or control of the petitioner is within this Court's jurisdiction.

This Court received exhibits and some testimony from petitioner. The following appear to be the facts appropriate to decide the motion.

Petitioner was born in Pontiac, Michigan September 17, 1947. In 1953 he with his parents moved to Indiana. While living there, in September 1965 he matriculated at Indiana University, Bloomington, Indiana.

While an undergraduate, on March 22, 1967, he executed a contract of enlistment in the Air Force Reserve, and, simultaneously, a statement of understanding. [Ex. 1] The contract is not in evidence. But it seems to be agreed that, as a consequence, the Air Force assigned petitioner to Detachment 215, Air Force ROTC as a member of the POC.

About a year and a half later, September 19, 1968, two days after he became 21, petitioner, then a Cadet 1st Lt., AFROTC, wrote the Professor of Air Science of 215th AFROTC Cadet Wing, that "I find myself no longer favorably motivated toward a commission within the Air Force and, therefore desire to disenroll from ROTC."

October 28, 1968 the administrative officer of Detachment 215 issued an order that "Cadet Steven A. McKay * * is discontinued from the POC effective 23 October 1968. * * * Cadet will immediately return his AFROTC uniform [etc.]. * * * The appointment of * * * Cadet Steven A. McKay as a Financial Assistance Grant student at Indiana University is terminated. * * Cadet McKay will not depart the campus. * * * "

March 20, 1968 petitioner, on form AFR 35–24, applied for discharge from the Air Force as a conscientious objector. October 20, 1969 the Air Force disapproved the application.

October 27, 1969 the Air Force issued to petitioner an order directing him to report on December 4 to Lackland Air Force Base, Texas. November 4 petitioner received the order.

At the time petitioner received the order he had not graduated from Indiana University. He had taken examinations, some of which had not been graded; and he was hopeful of receiving a degree in February 1970. In Indiana he had a bank account. He was licensed by Indiana to drive an automobile, and he owned a car with an Indiana registration. He had paid local taxes in Indiana.

When petitioner's parents moved in February 1969 from Indiana to Rolla, Missouri, petitioner was still a university student, but then 21 years and 5

months old. He visited his parents at Easter 1969 and again, when he was sick, in May 1969.

Petitioner first came to Massachusetts November 28, 1969. This was a month after the Air Force issued its order, and 3½ weeks after he received it. In this Commonwealth he is living in a boarding house. There he has two suitcases, one book, and some personal correspondence; but no other articles of value. On the day this petition was filed, December 1, petitioner secured employment as an economist-sociologist at Urban Planning Aid, Inc., Cambridge.

Upon the basis of the foregoing facts the motion to dismiss must be granted.

■ First, this Court concludes that in view of the first sentence in the order issued October 28, 1968 (under which McKay is discontinued from POC), there is no evidence that petitioner is now in the respondent Secretary's custody. The Court unfortunately does not have before it the contract of petitioner's enlistment. But from Ex. 1, the statement of understanding executed by petitioner, and from Ex. 2, the October 28, 1968 order, as well as from paragraph 4 of the petition here at bar, it appears that when the petitioner was discontinued from the POC (that is, the Professional Officer Course) of the ROTC, he was not in any kind of custody. So far as this Court knows, there was no contract, regulation, statute, or other legal basis for the administrative officer to order on October 28, 1968 that "Cadet McKay will not depart the campus." And there is not the slightest suggestion that either the Air Force or McKay has supposed that that fiat was other than a meaningless pretense of authority. It probably is true that McKay remained subject to the risk of being ordered to active duty pursuant to some undisclosed contract. But from the moment he was out of the ROTC he was not subject to an immediate command. The only command issued to him thereafter was the one of October 27, 1969 and that does not ripen until

tomorrow, December 4, when petitioner is due in Texas.

■ Second, if this Court be mistaken in the first conclusion just stated, and petitioner remained in custody of the Air Force after October 28, 1968, then his custody made it wrongful for him to come to Massachusetts. The October 28, 1968 order purports to provide that "Cadet McKay will not depart the campus." Hence petitioner in coming here would be AWOL. And if he is AWOL, then the petition for habeas corpus is precluded by United States ex rel. Rudick v. Laird, 2 Cir., 412 F.2d 16; Wiessner v. Donahue, D.Mass., Misc.Civ. 69–74–G, October 31, 1969.

■ Third, even if, contrary to the above two conclusions, petitioner is in custody and is not AWOL, his right to be heard in this District upon a petition for habeas corpus has not been established. It is obvious from the facts recited earlier in this opinion that when petitioner on November 4, 1969 received the order to go to Texas, petitioner was domiciled in Indiana. If it be material, I conclude he is still domiciled there. In any event when he filed his petition in this Court on December 1, petitioner had no such contact with this District, and the order he received had no such relation thereto, and the activities and records of the Secretary here would not justify this Court in entertaining jurisdiction of the petition. Possibly there would be a want of "due process" under the Fifth Amendment to require the Secretary to respond here. Certainly, in its discretion the Court can dismiss the petition on the ground of *forum non conveniens*. It is against the public interest that any plaintiffs (whether or not they be petitioners who seek relief from military service on the ground of conscientious objection) should be free to select a forum to which they have no substantial relation except the hope that the judges of that forum will view their claim sympathetically. Other more appropriate forums are open and may be sought.

Motion to dismiss granted.